1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF RHODE ISLAND

3

4

    * * * * * * * * * * * * * * *   C.R. NO. 13-135M

5                              *

  UNITED STATES OF AMERICA    *

6                              *

    VS.                    *   APRIL 28, 2015

7                              *   10:00 A.M.

  JOHN J. FALL             *

8    * * * * * * * * * * * * * * *   PROVIDENCE, RI

9

10          BEFORE THE HONORABLE JOHN J. McCONNELL, JR.,

11                    DISTRICT JUDGE

12

                    (Sentencing)

13

14  APPEARANCES:

15  FOR THE GOVERNMENT:   JOHN N. KANE, ESQ.
                        JEFFREY BRIAN BENDER, ESQ.
16                    U.S. Department of Justice
                        Tax Division
17                    601 D Street, N.W., 7th Floor
                        Washington, D.C.  20530

18

  FOR THE DEFENDANT:   JOHN J. FALL, PRO SE
19                    108 Princess Avenue
                        Cranston, RI  02920

20

                        KEVIN J. FITZGERALD, ESQ.
21                    Federal Defender's Office
                        10 Weybosset Street, Suite 300
22                    Providence, RI  02903

23  Court Reporter:   Karen M. Wischnowsky, RPR-RMR-CRR
                        One Exchange Terrace
24                    Providence, RI  02903

25

1    28 APRIL 2015 -- 10:00 A.M.

2         THE COURT:  Good morning, everyone.  We're here

3    this morning for sentencing in the case of the United

4    States versus John J. Fall, Criminal Action Number

5    13-135.

6         Would counsel identify themselves for the

7    record, please.

8         MR. KANE:  Good morning, your Honor.  John Kane

9    for the United States.  With me at counsels' table is

10   Mr. Bender, Jeff Bender, with the Department of Justice

11   for the Government as well.

12        THE COURT:  Good morning.  Welcome back, folks.

13        MR. KANE:  Thank you.

14        MR. BENDER:  Good morning.

15        MR. FITZGERALD:  Kevin Fitzgerald for Mr. Fall.

16        THE COURT:  Good morning, Mr. Fitzgerald.

17        MR. FITZGERALD:  Good morning, your Honor.

18        THE COURT:  I have received a copy of the -- let

19   the record reflect that the Defendant is in the

20   courtroom.

21        I've received a copy of the presentence report,

22   the Government's sentencing memorandum, an objection to

23   the presentence report, which we'll deal with in due

24   order, and various filings by the Defendant that are on

25   the docket.

1          The presentence report calculates the advisory

2     sentencing guidelines as follows.  Mr. Fitzgerald, I

3     will hear your objections as we go through it.  For the

4     three counts -- is it three counts?

5          THE DEFENDANT:  Sir, for the record, I require

6     to augment my allocution already on the record.  That's

7     my right.

8          THE COURT:  For the four -- Mr. Fall, if you

9     wish to be heard, you need to sit at defense table by a

10    microphone.

11         THE DEFENDANT:  As you know, sir, I'm neither

12    the Defendant nor the accuser.

13         THE COURT:  The four counts that Mr. Fall was

14    found guilty of carry with it a base offense level of

15    18.  The tax loss has been calculated to be between 200

16    and 400 thousand dollars, which is why the base offense

17    level of 18 applies.

18         In addition, the Probation Department has added

19    two points under Sentencing Guideline 2T1.1(b)(2)

20    because the Defendant used multiple methods in an

21    attempt to conceal his criminal activity by setting up

22    multiple business entities and bank accounts across the

23    country and by using false names.  That carries with it

24    a two-point addition.

25         In addition, the Probation Department has

1    calculated an adjustment for obstruction of justice.

2    Their recommendation is that the Defendant willfully

3    obstructed or impeded or attempted to obstruct or

4    impede the administration of justice with respect to

5    the investigation, prosecution or sentencing in the

6    instant offense and that the obstructive conduct

7    related to the Defendant's offense of conviction and

8    any other relevant conduct or a closely-related

9    offense; and, therefore, two points were added.

10        The Defendant, through its objection to the

11   presentence report, objects to that two-point

12   enhancement, which I'll hear in one second.

13        The adjusted offense level comes to 22.

14   Mr. Fall has no criminal history points and, therefore,

15   is a Category I.  So for an offense level of 22 with a

16   criminal history of I, the recommended period of

17   incarceration is 41 to 51 months.

18        Mr. Kane, any objection to the presentence

19   report or the calculation of the guideline range by the

20   Government?

21        MR. KANE:  No objection from the Government.

22        THE COURT:  Mr. Fitzgerald, you have filed an

23   objection concerning the offense conduct that was

24   listed as well as the two-point enhancement for

25   obstruction of justice.  I'll hear you on that.

1      MR. FITZGERALD:  Your Honor, the -- would you

2  like me to go to the middle?

3      THE COURT:  I think it's better for the

4  stenographer if you would.

5      THE DEFENDANT:  Sir, for the record, I require

6  to augment my allocution already on the record.  I'm

7  here by special visitation under threat --

8      (Defendant confers with counsel.)

9      THE COURT:  Mr. Fitzgerald.

10      MR. FITZGERALD:  Your Honor, getting to the

11  obstruction of justice enhancement, I'd like the Court

12  to keep in mind the timing of my objection filing and

13  then when the sentencing memorandum came from the

14  Government, okay, because it came afterwards, your

15  Honor.

16      The presentence report says that the obstruction

17  of justice enhancement is applied per the offense

18  conduct, which just comes from the Government.  All

19  right.  It's not the Government's decision.  It's the

20  Court's decision whether there's been obstruction of

21  justice or not.

22      So when probation puts in there that per the

23  Government Mr. Fall committed perjury and, therefore,

24  two points are applied, we've got the cart before the

25  horse.

1          THE COURT:  Well, let me do this.  Let me ask

2     you to -- do you want to be heard on the offense

3     conduct section that's in the presentence report?

4     Let's put aside the obstruction of justice.

5          MR. FITZGERALD:  Yes.

6          THE COURT:  Why don't you be heard on that.

7          MR. FITZGERALD:  Your Honor, there is no --

8          THE COURT:  Why don't I let you be heard on

9     that.

10          MR. FITZGERALD:  Thank you.  There's no rule,

11     there's no regulation that says there is an offense

12     conduct section in the PSR.  It's something we do,

13     generally do.  I think the intent is that it helps the

14     Court understand the whole case and it helps the Court

15     figure out what the sentence ought to be.

16          Now, if you combine that with the fact that the

17     vast overwhelming majority of cases are pleas and

18     everybody pleas to an agreed-upon set of facts, the

19     offense conduct section is usually not an issue.  Most

20     of the time everybody agrees what the ingredients are,

21     what the facts are in the offense conduct.

22          When we have a trial, it changes, okay, because

23     at a trial we do have a decision that's made at the end

24     of the trial, and it's whether somebody is guilty or

25     not guilty of the charges, and the jury makes that

1    decision.  And after trial, that's the only fact that's

2    decided, that is, the offense conduct, did somebody

3    commit that crime or did they not.  That's it.  Okay.

4    Everything else is not agreed upon by the parties.

5    Okay.

6           So in this instance, the Government put a whole

7    lot of -- well, they put their theory, what they

8    believe the facts of the case are in there.  The

9    objection is, that's not the place for it.

10          And after I filed that, we got the sentencing

11   memorandum from the Government last week, and all those

12   same facts are in the sentencing memorandum, and that's

13   the place it should be.  That's the appropriate place.

14          THE COURT:  Let me hear from Mr. Kane on just

15   that issue.

16          MR. FITZGERALD:  One other thing, your Honor?

17          THE COURT:  Sure.  Of course.

18          MR. FITZGERALD:  When those facts are included

19   in the PSR --

20          THE COURT:  It has repercussions.

21          MR. FITZGERALD:  -- it has repercussions, and it

22   follows the Defendant around.

23          THE COURT:  I understand.

24          MR. FITZGERALD:  Thank you, your Honor.

25          THE COURT:  Mr. Kane.

1          MR. KANE:  Your Honor, I think it's standard

2     practice not only in this district but other districts,

3     the Probation Department does an investigation,

4     presentence investigation, and they seek the views of

5     the facts from Government counsel.  That's what was

6     done here.

7          The Defendant presumably had an opportunity to

8     put their version of the facts.  Clearly we had a jury

9     verdict that basically affirmed in our view or the

10    evidence affirmed virtually all of the facts in the

11    PSR, and it was up to the defense counsel to lay out

12    specific objections as to each paragraph or statement

13    of fact in the PSR.

14          Defense counsel didn't do that.  Defense counsel

15    did object to general characterizations, and I think

16    he's got a fair point on that.  For example, I think he

17    cites paragraph 13 in which the characterization that

18    he embarked on a decade-long campaign perhaps is more

19    argument than statement of fact.  And if the Court

20    wishes to strike that part of the PSR, we would not

21    object.

22          But with respect to the other statements of fact

23    in the PSR, they are, in fact, statements of fact.

24    They are consistent with the evidence at trial, and the

25    case was proven beyond a reasonable doubt.

1          So in light of the fact that the Defendant

2     didn't specifically object to the other statements of

3     fact, we think the Court can make the findings set

4     forth in the PSR short of the characterization that he

5     highlights.

6          THE COURT:  Here's what I'm going to do.  I am

7     going to sustain the Defendant's objection to the

8     offense conduct.  We have tried in this district under

9     Chief Justice Smith to come to some better

10    understanding of how we come to offense conduct

11    paragraphs that are contained in the PSR where we have

12    worked through trying to deal with this very issue

13    where facts may be contested in certain instances and

14    the fact that the PSR lives with the person at least

15    during their custody, if not beyond.

16          And I do find that there are various, let's call

17    them, extra adjectives and adverbs in here that perhaps

18    carry with it matters that shouldn't necessarily go

19    along.

20          So toward that end, I'm going to ask the

21    Probation Department, instruct the Probation Department

22    to redo the offense conduct contained in the PSR such

23    that just the facts of what Mr. Fall was convicted of

24    before this jury are contained in there.

25          I will state for the record and I found that in

1   no way, shape or form is this Court considered or does

2   it consider what is currently contained in the offense

3   conduct as the offense conduct in the PSR and is

4   proceeding with the sentencing pursuant to the fact

5   that I sat through this trial, and I will proceed with

6   it accordingly.

7        So on the issue of the offense conduct, I will

8   sustain the objection.  The Probation Department will

9   issue a new offense conduct, he'll send it to both

10   sides, both sides will have time to object to the new

11   offense conduct, and if there's an objection, I'll rule

12   on it.  If there isn't, then we'll insert it into a

13   revised PSR.

14        Mr. Fitzgerald, the obstruction of justice

15   objection.

16        MR. FITZGERALD:  Your Honor, one of the bases in

17   the PSR for that enhancement was the Government

18   declaring that Mr. Fall committed perjury.

19        THE COURT:  Put aside the perjury part because

20   there's a lot in this case, at least on my side, that

21   goes beyond needing to find perjury in order to apply

22   the obstruction of justice.

23        MR. FITZGERALD:  Your Honor, beyond the perjury,

24   I think that's up to the Court to decide whether or not

25   that obstruction of justice applies or doesn't apply.

1    So I'd leave that to the Court to decide.  As you said,

2    you listened to the trial.  That's your decision.

3         THE COURT:  Mr. Kane, do you want to be heard

4    any further on it?

5         MR. KANE:  No, your Honor, but we do remind the

6    Court that, as set forth in our sentencing brief, other

7    circuits have addressed -- circuits, Tenth Circuit I

8    think, the Ninth Circuit, some District Courts, in

9    which they found the obstruction enhancement does apply

10   based on those two additional grounds beyond perjury.

11        We think perjury is well-supported.  We laid it

12   out in our brief; but in addition, the retaliatory

13   lawsuits, the frivolous paper, all that we think

14   supports the obstruction enhancement.

15        THE COURT:  I'm going to overrule the

16   Defendant's objection to the obstruction of justice

17   enhancement and apply it in this instance without

18   making any determination on whether perjury occurred or

19   not.  There's others that will make that determination.

20        The guideline enhancement is for willfully

21   obstructing or impeding the administration of justice

22   with respect to the investigation, the prosecution or

23   the sentencing.

24        There are two particular categories of cases

25   that the Court finds makes the obstruction of justice

1    enhancement appropriate.  One was the filing of false

2    and harassing documents during the course of the

3    judicial proceedings, including allegations and filings

4    that were made that this Court deems to have been

5    fraudulent, as well as charges that were made and

6    asserted against both the prosecutors and court

7    personnel in filings with the court.

8         It's one thing to defend yourself or to assert

9    personal or political beliefs.  It's another thing to

10   make false accusations in court filings about personnel

11   and the prosecutors in this case.  That's the first

12   reason.

13        The second stems a little from that but involves

14   the filing of two civil lawsuits against some or all of

15   the prosecutors in this case, both in State and Federal

16   Court.  The Court specifically finds that those filings

17   were an attempt to obstruct the investigation and the

18   prosecution of this case.

19        There is absolutely no doubt in this Court's

20   mind that Mr. Fall's actions in this matter during the

21   investigation and prosecution represented an attempt by

22   him to obstruct justice such that the enhancement

23   applies.

24        So the Court finds that the guideline range of

25   22 with the criminal history category of I is

1    appropriate carrying with it a recommended period of

2    incarceration of 41 to 51 months, and I'll hear from

3    the Government on its sentencing recommendation.

4         MR. KANE:  Thank you, your Honor.  Section

5    3553(a), as the Court knows, requires the Court to

6    consider a number of factors before imposing sentence.

7         In addition to the guidelines which themselves

8    account to a large extent for 3553(a) factors, the

9    Court must consider the nature and circumstances of the

10   offense; the history and characteristics of the

11   Defendant; the need for deterrence, which is especially

12   important in tax cases, both specific and general; and

13   the need to avoid unwarranted sentencing disparities,

14   to essentially be fair across the board to similarly

15   situated Defendants.

16        But there's another factor that 3553(a)

17   mentions, a factor that I think ties all the other

18   factors together in this case, a factor that I think

19   would jump out to anybody who came to this case and

20   considered it for the first time afresh, and that is

21   the need to promote respect for the law.  I think that

22   consideration ties it all together, your Honor.

23        Indeed, at its core, I think this case really is

24   about the Defendant's willful, arrogant and continuing

25   and unyielding contempt for the rule of law at least

1    with respect to taxes.

2         From his decision to stop paying taxes back in

3    1999 all the way through to the present, including the

4    obstructions of this Court, this case cries out for a

5    sentence that promotes respect of the law and tells

6    this Defendant and others that would engage in the

7    conduct that he engaged in that they're going to pay a

8    heavy price.

9         Indeed, the need to promote respect for the law

10   can be seen first in the nature and circumstances of

11   the offense, including the long chronology over which

12   he committed these offenses.

13        As of April 1999, he decided he wasn't going to

14   pay taxes anymore.  That was the deadline for his 1998

15   tax return.  He was done paying taxes.

16        As early as 1999, he's using warehouse accounts,

17   he's setting up nominees.  Long before the IRS

18   contacted him, long before the IRS audited him, long

19   before the IRS allegedly wronged him in some way, he

20   decided he was done.  He stopped filing.  He continued

21   to stop filing all the way to the present.

22        Not only did he do that, he engaged in an

23   elaborate scheme to conceal.  As we proved at trial and

24   as we argued in our brief, multiple layers of

25   concealment, sophisticated concealment.  As we noted in

1    our briefs, virtually every tax fraud tool available he

2    tried to use.

3         Sixteen shell companies to hide his financial

4    affairs; multiple bank accounts, I think 18 bank

5    accounts literally from coast to coast; commingled bank

6    accounts; nominee bank accounts; transferring monies

7    between those accounts; warehouse accounts; multiple

8    warehouse accounts; nine fake names and aliases to lend

9    further concealment; extensive use of cash; the use of

10   nominee business addresses, all of it to ensure what he

11   said in Exhibit 71-F offered at trial, to ensure that

12   he would never pay taxes again.

13        In spite of all these efforts, the IRS caught up

14   with him as early as 2002.  Did he get right with the

15   law?  Did he comply with the law?  Did he respect the

16   law?  He did not, your Honor.

17        To the contrary, he tried to obstruct the audit

18   as to his taxes.  He filed frivolous paper with the IRS

19   hoping that maybe the agents would go work an easier

20   case because that's what they do, harass and

21   intimidate, filing fictitious financial claims against

22   those agents.

23        And he was warned repeatedly as early as 2002

24   that what he was doing was wrong, that what he was

25   doing could lead to his prosecution, that what he was

1    doing could land him in prison as early as 2002.

2           He didn't heed that advice.  He ignored it and

3    pressed full steam ahead; but as bad as that is as to

4    his own taxes, he also encouraged others to break the

5    law starting with his wife.

6           As charged, and as we proved at trial, he

7    encouraged his wife to file false corporate returns.

8    2006 and 2007 were charged.  We showed at trial that it

9    actually went back as far as 2003 creating false

10   advertising expenses, false equipment expenses.

11          He caused her to file false personal returns

12   which we showed at trial, at least the 2005 return, in

13   which some of those same false deductions are appearing

14   on her personal returns, which shows you that he was

15   behind it all from the very beginning.

16          She, too, was caught.  She was caught in 2008.

17   The IRS audited her.  Did he get right with the law?

18   Did he encourage her to comply with the law, to respect

19   the law?  To the contrary.  He encouraged her to break

20   the law, to not show up at the summons.

21          He told her accountant, Bill Harrigan, if you

22   recall his testimony, that he shouldn't cooperate with

23   the IRS, that he should use his technology papering the

24   IRS hoping that they would go away.

25          He filed frivolous papers with Ken Cournoyer

1  trying to harass and intimidate, again making

2  fictitious financial claims, all in an effort to show

3  disrespect for the law and to obstruct the IRS.  They

4  were not good faith inquiries.  They were designed to

5  obstruct.

6       But it didn't stop there.  2010 he files false

7  papers with the U.S. District Court for the District of

8  Massachusetts in which he denied any interest in NERH,

9  which the evidence at trial showed he created using his

10  aliases.  I think Thomas Brown was the one he used to

11  create that entity.  He denied ownership and control of

12  the funds in the U.S. District Court.

13       And it didn't stop there.  After Indictment, as

14  the Court has now found, he tried to obstruct the

15  prosecution of this matter through all that he did, all

16  his paper; but he also committed perjury, multiple

17  falsehoods during his testimony, manipulation and

18  deception throughout.  Claiming that Managed Skills was

19  real.  It wasn't.  Claiming he didn't create Managed

20  Skills.  The overwhelming evidence showed that he did.

21  Denying any interest in NERH, that he created that.

22  The overwhelming evidence showed that he did.  Denied

23  that he knew anything about the cash coming into

24  Comfort Dental.  The evidence showed that he did.  And

25  we lay out other perjuries in our brief.

1              In addition to the nature and circumstances of

2     the offense, the history and characteristics of the

3     Defendant, as we point out in our brief, again, utter

4     disrespect for the law.  Not only did he encourage his

5     wife to violate the tax laws, he encouraged others.

6              Research found on his computer disks shows he

7     was setting up a business to promote tax fraud.  It's

8     not clear whether he was successful at it, but we do

9     know at least two witnesses who have come forward whose

10    statements we provided in our brief who outline how

11    Mr. Fall encouraged them to break the law on taxes.

12             And the documents found on his disks show

13    research and him setting up a business to promote tax

14    fraud.

15             The divorce court order, I think that's part of

16    the mix at this point, another area outside of taxes

17    where he showed contempt for the law, contempt for

18    Judge McCann, refused to recognize the Court.

19             There were witness statements we provided in our

20    briefs in which he did the same or similar kinds of

21    things that he's done here, contempt for the law,

22    disrespect for the law.

23             The need for deterrence, it's especially

24    important in tax cases, your Honor, because of the

25    relatively few prosecutions, the nature of our

1    collection system.  The Sentencing Commission as an

2    introduction to the guidelines points out how important

3    deterrence is, general deterrence.

4            Honest taxpayers need to know that when people

5    like John Fall do what they do, they're going to pay a

6    heavy price.

7            We would ask the Court to think about the honest

8    taxpayers in this country who just went through another

9    filing season.  A lot of them struggle to make ends

10   meet.  A lot of them struggle to come up with a check

11   to write to the Treasury, but they do it, they do it,

12   more often than not because of respect for the law and

13   that they know there's probably a heavy price to pay if

14   they're tempted to do otherwise.

15           John Fall over 10 years scoffed at that idea,

16   made a mockery of that.  What he did was an affront to

17   those taxpayers.  We'd ask the Court to send a message

18   to those honest taxpayers that their honesty does

19   matter.

20           And in this case specific deterrence is also an

21   issue, and that's not always an issue in tax cases,

22   your Honor.  In some cases, there's some degree of

23   remorse.  In perhaps many cases, the offender never

24   commits the offense again.

25           But this Defendant, although he stands before

1    this Court for the first time for criminal sentencing,

2    he's essentially a recidivist when you take a look at

3    what he did during all those audits given all the

4    warnings that he was given.  He just refused to comply

5    with the law.  He refused to show respect for the law.

6         Finally, on sentencing disparities, we pointed

7    out in our brief there were some other tax evasion

8    sentencings in this district before Judge Lisi.  I

9    think the Bruce Lapierre and the Al Martin case in

10   which they both received 51 months is an appropriate

11   analogy.

12        There really is no individual circumstances here

13   that should mitigate from that sentence.  They were

14   unrepentant tax defiers.  They, too, I think, cheated

15   on their taxes for more than a decade.  So in order to

16   avoid --

17        THE COURT:  Mr. Kane, tell me what you know

18   about Eva Melissa Sugar, who is listed in the PSR as a

19   related prosecution who got 18 months.  I remember the

20   name during the trial, but I couldn't place what her

21   role was or what her offense was.

22        MR. KANE:  I think she pled to conspiracy, if

23   I'm not mistaken, and she was essentially a promoter

24   out in Colorado in which she helped people like John

25   Fall set up shell companies, bank accounts.

1          I don't know what the tax loss was.  She pled

2     guilty.  She took responsibility for her action.  She

3     showed remorse before trial.  She didn't perjure

4     herself.  She didn't obstruct the Court.

5          So there are a lot of, I think, distinguishing

6     circumstances, although she did I think receive an

7     18-month sentence.

8          So, your Honor, I think taking all of those

9     factors into account, we respectfully suggest that a

10    guideline sentence is appropriate here, and we

11    respectfully recommend that the high end is appropriate

12    given his obstruction of justice here, and we recommend

13    a 51-month term of imprisonment and three years of

14    supervised release.

15         We mention in our brief two special conditions.

16    One condition is typical that we ask for, and that is

17    that he cooperate, when he's released, with the IRS to

18    disclose his financial affairs and pay all back taxes

19    that he may owe, which is going to be less than the

20    $392,000 tax loss because part of that is Carmen's

21    amount that she paid back.

22         And the second factor is unique to this case,

23    and that is we think there should be an order

24    precluding him from filing the kind of false, frivolous

25    papers that the Court has now found to be obstructive

1    to deter him from further corroding the Court with

2    these kinds of filings, and that should be a special

3    condition.  Thank you.

4              THE COURT:  Thank you, Mr. Kane.

5              Mr. Fitzgerald.

6              MR. FITZGERALD:  Your Honor, I'm going to try to

7    maintain a direct route through my sentencing argument

8    here, but I feel like I might be skipping around a bit.

9              It seems to me after listening to the argument

10   and reading the Government's sentencing memo, the

11   biggest reason the Government wants the 51-month

12   sentence, aside from the guidelines, that's what the

13   guidelines say, is that they think that Mr. Fall is

14   arrogant.

15             Your Honor, I know arrogance.  Okay.  I know

16   arrogance.  Mr. Thompson's here in the courtroom.  He

17   understands that I know arrogance because he has to

18   work with me on a daily basis.

19             THE COURT:  Should we put him on the stand?

20             MR. FITZGERALD:  I think he would confirm what

21   I'm saying, but at least I can admit that I'm arrogant.

22   Okay.  The Government's case against Mr. Fall was

23   arrogant.  Okay.  Their request to you for a sentence

24   is arrogant.  And I'm not just picking on --

25             THE COURT:  Let's assume it's arrogant.  Is it

1    justifiably arrogant, if it even were arrogant?

2         MR. FITZGERALD:  No, it's not justifiably

3    arrogant.  And, unfortunately, it's Mr. Kane and

4    Mr. Bender here today, but this is not something that's

5    just on them.  It's something that appears in

6    Government sentencings and Government cases all the

7    time.

8         Your Honor, if you remember back to the case

9    against Mr. Fall, we heard about millions and millions

10   of dollars going through all these different bank

11   accounts, all of these warehouse accounts, all right,

12   Agent Pleshaw, his slides about all these millions of

13   dollars.

14        And in the PSR we have these related cases,

15   right, which I found curious that they're included in

16   the PSR.  I didn't object to it.  It's the first time

17   I've seen cases attached to a PSR who were not

18   Co-Defendants and were from other jurisdictions.  I

19   don't know.

20        The relation is not that they conspired with

21   Mr. Fall, even though you'll see they were all

22   convicted of conspiracies.  The relationship was that

23   Mr. Fall's money, according to the Government, went

24   through those people; but it's added in there to make

25   Mr. Fall look like a bigger criminal than he actually

1    is.

2         The millions of dollars that flow through these

3    warehouse accounts was not money that he was in control

4    of.  They come here today and they say the loss amount

5    is 390 something thousand dollars, that's all, but

6    we've put forth this arrogant argument that Mr. Fall is

7    a far bigger criminal than he is and that he's arrogant

8    and, therefore, give him a top-of-the-guideline

9    sentence.  Okay.

10         The sentencing guidelines, Judge -- perhaps this

11   is where I'm going to be arrogant now.  The sentencing

12   guidelines are simply not credible.  They lack

13   credibility.  The Government quoted the introduction to

14   the tax guideline, okay, in their sentencing memo, and

15   on page -- I'm sorry.  I do have the actual page

16   number.

17         They quoted the introduction to the tax

18   guideline, and I'll just read the portion that I think

19   makes most -- is most important for this.

20         In the middle of that paragraph it says -- these

21   are the introductory comments to, excuse me, Part T of

22   the offense conduct in the sentencing guidelines.  In

23   the middle of that commentary paragraph it says,

24   "Because of the limited number of criminal tax

25   prosecutions relative to the estimated incidence of

1    such violations, deterring others from violating the

2    tax laws is a primary consideration underlying these

3    guidelines."  Okay.

4         So what that tells me is that the Sentencing

5    Commission thought that deterrence, deterrence was the

6    main force in coming up with these sentencing

7    guidelines.

8         Right underneath it says this was written in

9    1987, so almost 30 years ago, and we're still fighting

10   the same battle.

11        So one of the things that Congress told the

12   Commission to do was to write guidelines and watch the

13   guidelines and study the impact of the guidelines to

14   determine if they have the effect they're intended to

15   have, and clearly they're not because we still have the

16   same types of cases.

17        Okay.  Mr. Kane will tell you, this is the same

18   type of case.  We want to send out a message to these

19   people.  Okay.  Well, the sentencing guidelines that

20   the Government has latched themselves onto is not

21   sending that message.

22        Now, the tax table that's attached to or

23   referred to under the tax guidelines has changed since

24   1987.  And in 1987, Mr. Fall would have been looking at

25   a guideline range four levels lower than he is now.  So

1   are we to believe that the answer to deterrence is more

2   jail?  I don't think so because we still have these

3   cases coming.

4         And, actually, if you adjust for inflation and

5   economics, maybe there's really no difference.  Maybe

6   he's actually looking at a lower sentence now than he

7   would have been then or vice versa.  I'm not sure.

8         But the guidelines themselves simply lack

9   credibility.  That number, 41 to 51, that the Court's

10  decided on for the guideline range is pulled out of

11  thin air.  It's just pulled out of thin air.

12        Prior to the sentencing guidelines, 38 percent

13  of all cases in Federal Court, all people, Defendants

14  sentenced in Federal Court got probation.  Thirty-eight

15  percent.  Since the guidelines as we know, even

16  post-*Booker*, you know, your Honor, far less than 38

17  percent.

18        But one of the other things that Congress told

19  the Commission to do was to account for first-time

20  offenders, nonviolent crimes and -- I'm sorry, in

21  18 U.S.C. 994 Congress directed the Commission to

22  reflect the general appropriateness of imposing a

23  sentence other than imprisonment in cases in which the

24  Defendant is a first-time offender who has not been

25  convicted of a crime of violence or otherwise serious

1   offense.

2        Now, we can have a debate about whether this is

3   a serious offense or not, but it's certainly not a

4   crime of violence.  Mr. Fall's not a danger to the

5   community.

6        And I would say it's not a serious offense

7   looking at the penalties that can be applied here.  The

8   maximum penalty is five years in prison.  Simple

9   possession of a firearm carries up to 10 years.

10  Possession of small amounts of cocaine and crack

11  cocaine carry up to 20 years.  Bank fraud carries up to

12  30 years.

13       So there's a -- I would say looking at

14  everything, this is not the serious offense, okay, that

15  the Government thinks it is.  And Mr. Fall is the

16  person that the Congress -- is the type of person that

17  Congress was talking about when telling the Commission

18  to account for, in the guidelines, the appropriateness

19  of probation for a first-time offender.

20       And, your Honor, although the Government has

21  latched onto the guidelines and asked to be given the

22  top end of the guideline and mostly because they want

23  to promote respect for the law and a deterrent effect

24  and all, they really haven't demonstrated that that

25  sentence will have any deterrent effect.  They haven't

1    shown you that the sentencing guidelines have ever had

2    any deterrent effect in this matter.

3           Okay.   The Government is obviously concerned or

4    upset about Mr. Fall's campaign over time against the

5    IRS.   And you remember, Judge, though, he was actually

6    convicted of obstructing.   That was one of the charges.

7    Okay.   So the acts that were obstructing is one of the

8    things he's been convicted of.

9           THE COURT:   I looked at that because that's what

10   I initially thought.   And then I read the guideline,

11   the sentencing manual, and it says that you don't

12   apply -- I wondered whether an obstruction charge like

13   this would negate the addition of the obstruction

14   enhancement, but this isn't one of the provisions that

15   the guideline provides for on obstruction pretty

16   explicitly.

17          I was surprised by that, but that's -- you know,

18   if we're applying the guidelines, that's sort of how it

19   came down.

20          MR. FITZGERALD:   And they only have the

21   credibility that they have, which is, as I said, none.

22          THE COURT:   Don't throw it.

23          MR. FITZGERALD:   I'm not going to throw it.   I'm

24   not going to throw it.

25          But the fact is that some of the obstruction

1    they're complaining about now and saying it's an

2    aggravating factor is, in fact, the crime he was

3    convicted of.  Some of it, not all of it, but some of

4    it.  So it's not really an aggravating situation.  It

5    is the situation.

6         If you remember, your Honor, and I think you

7    listened, but if you remember -- I know you listened.

8    I'm sorry.  Mr. Fall was upset with the IRS because

9    they disallowed an $89,000 deduction.  Okay.

10        I've never had a deduction that large.  I would

11   be upset, too, if it was disallowed.  And he asked for

12   some answers from the IRS, which I think anybody

13   should.  They didn't give him a direct response.  They

14   gave him a canned response over and over, these form

15   letters over and over.  And their excuse is, Well,

16   we're trying to deal with millions and millions of

17   people.

18        Well, we're still individuals, and he certainly

19   expected an answer particular to his question.  They

20   never gave him that.  Okay.  So he's upset about that.

21   He's got a right to be upset about that.

22        THE COURT:  My silence, by the way, isn't

23   accepting everything you said but rather than -- the

24   record is clear that he didn't have a right to be upset

25   by that and to react the way he did, but I'll get to

1    that shortly.

2         MR. FITZGERALD:  I don't know whether he has a

3    right to or not, your Honor; but if you're asking for a

4    response, you're asking for an explanation that I think

5    you're entitled to, I think he has --

6         THE COURT:  If it's based in reality and not

7    based on fraud.

8         MR. FITZGERALD:  Well, there's a difference --

9    what Mr. Fall believes is different from what the

10   Government believes.  Okay.

11        And I'd point out, you know, another part of

12   this is the -- when the Government actually -- when the

13   IRS actually got to the point of wanting to sit down

14   with Mr. Fall in an audit or in person and act

15   personally with him, it wasn't about whether or not he

16   would pay.  It was about how much and when.  Okay.

17        So you never get to have that meeting with the

18   IRS about whether or not the deduction is appropriate.

19   It's we've already decided, you need to pay and when

20   are you going to pay us.  Okay.

21        So you can say that Mr. Fall doesn't have a

22   right to be upset, but he was upset.  Okay.  He

23   actually was upset.  And to say that he can't be upset

24   and the Government saying he can't be upset, I think

25   that's arrogance.

1          The Government says that one of the things he

2     testified to, being targeted by the IRS, is false, just

3     plain false.  Well, I think that that response is just

4     plain false because you remember, your Honor, the very

5     first witness we had from the frivolous tax unit, okay,

6     they have a list.  They have people that they label and

7     stick in the frivolous tax unit, and Mr. Fall was one.

8          Whether you call it targeting or labeling or

9     identifying, I don't care.  He was targeted.  He was

10    labeled.  The IRS had him on the radar.  Okay.

11         He felt he was targeted.  So him saying that he

12    was targeted is not a falsehood.  That's not perjury.

13    It's his perception of what's going on and somewhat

14    founded.

15         In the memo, during the trial, in the argument,

16    you know, the continued tax dodger, tax defier,

17    sovereign citizen, all these things, labeling,

18    labeling, labeling; and then they're going to say he

19    actually wasn't targeted at all.

20         I'm not saying he didn't have a chance to maybe

21    change some things, but he has been targeted and he has

22    been labeled and he has been treated a particular way.

23         Your Honor, the perjury accusations, okay, and

24    this again is not just something that Mr. Kane and

25    Mr. Bender I think suffer from with the Government, but

1    perjury is not when the Government doesn't believe you.

2    That's not perjury.  Just because the Government

3    doesn't believe what you say is not perjury.

4        Perjury by the statute, okay, 18 U.S.C. 1621, is

5    when the witness says something under oath, okay,

6    knowing or believing that it's not true.  He says it as

7    true, but he believes in his mind it's not true when he

8    says it on the stand.  That's perjury, and that's

9    different than not believing or disbelief by the

10   Government.

11       Most of what they've argued as perjury is just

12   disagreement or disbelief on the Government's part.

13   They said in the sentencing memo that Mr. Fall

14   committed a felony by committing perjury on the stand

15   during his stunted testimony.

16       I think that was somewhat ironic, your Honor, I

17   think I'm using that correctly, because one of the

18   things that Mr. Fall had said that the Government's

19   complaining about is he said that an IRS officer had

20   done something wrong and what the IRS officer had done

21   was a felony.  His belief, okay, is not perjury.

22       I'll give you a better example of what could be

23   perjury, though, or closer to what perjury is, and that

24   is what Carmen Sanchez did in this courtroom.  All

25   right.

1          If you remember, your Honor, Friday afternoon

2     the first week of the trial Ms. Sanchez was

3     testifying --

4          THE COURT:  Dr. Sanchez.

5          MR. FITZGERALD:  Dr. Sanchez.  Excuse me.

6     Dr. Sanchez was testifying, and I kept asking her about

7     those checks that she signed and whether or not she

8     knew that they were going to false expenses.  I think

9     if we actually pull up the transcript, you'll see she

10    never actually answered that question.

11         On Friday afternoon she got really tearful about

12    it.  She kept saying over and over that, Well, you

13    know, I trusted my husband, I trusted my husband, he's

14    my husband so I should trust him.

15         On Monday morning I asked her the same series of

16    questions.  Same answers.  She wasn't crying or

17    starting to cry on Monday morning.  Same answers.

18         Well, your Honor, when Dr. Sanchez testified at

19    the grand jury, the same questions were put to her by

20    the Government, and she did the same thing.  She didn't

21    say, Yes, I knew they were false checks, or, No, I

22    didn't know they were false checks.  She went on this

23    rambling thing about I trusted my husband.

24         Now, Dr. Sanchez is not, regardless of how she

25    testified, she's not meek, she's not stupid, she knows

1   exactly what she was testifying or signing.  That is a

2   closer example in my mind to perjury than what Mr. Fall

3   did.

4          And, you know, if it was just her answering me,

5   it would be one thing --

6          THE COURT:  Whether one or two people committed

7   perjury, Mr. Fitzgerald, in the courtroom isn't for me

8   to determine at this point.  As I told you before, I'm

9   not making a determination on perjury.

10         Clearly, I'm not making a determination on

11  whether or not Dr. Sanchez committed perjury, but I

12  told you earlier in the discussion that I will leave

13  that to others or not to make that determination,

14  but --

15         MR. FITZGERALD:  That's fine, your Honor.

16         THE COURT:  That's a legal finding after due

17  process and a trial, a determination of whether someone

18  committed perjury or not.  I don't have that here.  I'm

19  not considering perjury as part of any analysis in the

20  sentencing.

21         MR. FITZGERALD:  That's fine.  That's their

22  argument that he should get part of the sentence

23  because of committing perjury.

24         Your Honor, the Government talking about guiding

25  other people into violating the law, dragging other

1   people along to commit these tax crimes.  The first is

2   the allegations about him bringing his wife into this,

3   bringing Dr. Sanchez into this, convincing her to break

4   the law.  Okay.  He's been convicted of that, so that's

5   not an aggravating factor.  That is the case.  That's

6   the first part.

7          The second thing is that the Government included

8   in their sentencing memo as exhibits statements from

9   two people, a Mr. Pappagano or Papagno (phonetic) and a

10  Ms. Allen; and I'd suggest that each one of those

11  statements about Mr. Fall trying to get them to do

12  things is really not credible, shouldn't be taken with

13  any kind of credibility, and here's why.

14         Mr. Papagno, as far as I could tell in the

15  limited time that I had to research him, seems to be in

16  the crosshairs of the IRS already, okay, and for as far

17  as I could tell for his own doing, not necessarily

18  Mr. Fall telling him to do something; but in any event,

19  his statements are certainly clouded or muddied up by

20  his own legal problems.

21         Ms. Allen, on the other hand, is in between

22  pleading guilty and her sentencing right now, and I

23  think the date on her statement was last week, okay;

24  and her plea agreement is that she pleads guilty to one

25  count, and I can't remember if it was just filing a

1  false tax return or aiding and abetting or something,

2  they would dismiss the other four or five counts of

3  false statements.  That's part of her plea agreement.

4      The other part of her plea agreement is that she

5  cooperate with the Government against any and all that

6  she can provide information about.

7      Now, she pled guilty prior to Mr. Fall's trial,

8  so presumably the Government already knew that

9  Ms. Allen -- the allegations that Ms. Allen was making

10  against Mr. Fall back then, but we're just hearing

11  about it a week -- within the last week.

12      Clearly Ms. Allen's statements about Mr. Fall

13  getting her to commit illegal acts are biased based on

14  her own criminal liability, and she's in jeopardy.

15  She's facing sentencing here shortly.

16      All right.  Your Honor, I apologized I was going

17  to be rambling around a bit at the beginning.  I just

18  want to end with this.  When we talk about the purposes

19  of sentencing under 3553(a), one of them is not

20  uniformity in sentencing.  Uniformity comes from the

21  Sentencing Reform Act that created the guidelines.

22      The guidelines are about uniformity.  The

23  guidelines categorize everybody by criminal history and

24  crime, the new crime.  That's it.  Those two factors.

25  That's how they create uniformity.

1          Sentencing and 3553(a) is about sentencing the

2     single individual here, Mr. Fall.  Whether his sentence

3     is uniform with other people or not is not 3553(a)'s

4     aim.  He's sentenced as an individual.

5          Deterrence and respect for the law, that's what

6     the Government is hanging their hat on for the 51-month

7     recommendation here.  Okay.  That number is based on

8     the guidelines.  All right.

9          There's nothing to say that 51 months or 41

10    months or anywhere in between under the guidelines is

11    going to be a better deterrent than a sentence that's

12    shorter.

13         There's nothing to say it's going to promote

14    more respect for the law, 41 to 51 months or a sentence

15    that's shorter.  As I said before, he's not a danger to

16    the community.

17         The Government's asked for a supervised release

18    condition that he cooperate with the IRS and eventually

19    pay back taxes and satisfy fines and everything.  Well,

20    he certainly can't do that if he's locked up, if he's

21    not going to have any money to do that.  So that is a

22    purpose of sentencing; that if we want him to pay back

23    this money, he needs to be out, not in, jail.

24         Your Honor, and common sense should say, I think

25    it is, that the only reason for prison for Mr. Fall is

1    simply to punish him because it's not going to, in

2    fact, create any deterrence.  It's not going to change

3    Mr. Fall's attitude towards law, or I shouldn't say

4    attitude, his understanding of what the law is and what

5    the authority is.

6          Your Honor, I'm asking for probation because

7    he's a first-time offender and he's not convicted of a

8    serious crime, of a violent crime, he's not a danger to

9    the community, and the Government ultimately wants to

10   be repaid and made whole.

11         There is one last thing, your Honor.  The second

12   supervised release condition the Government asks for,

13   I'm going to object to that because effectively

14   Mr. Fall could file something and after he's done that,

15   according to the way that the condition's written, he

16   could be told that it's frivolous.

17         So that's not the way the conditions are

18   supposed to work.  You're supposed to know exactly what

19   it is that's wrong before you do it.

20         So I understand what the Government's trying to

21   do there; but that condition is, I guess I would say,

22   unconstitutional because he's going to be punished for

23   something after he does it.  He's not being told what's

24   not allowed ahead of time, your Honor.  So thank you.

25         MR. KANE:  May I on one issue?

1          THE COURT:  I'm all set, Mr. Kane.  Thank you.

2          Mr. Fall, do you wish to address the Court

3     before I impose sentence?

4          THE DEFENDANT:  Sir, as I've stated --

5          THE COURT:  Mr. Fall, simple question.  Do you

6     wish to address the Court before I impose sentence?

7          THE DEFENDANT:  I wish to make my allocution.

8          THE COURT:  And you have a right to do it, and

9     I'm going to afford you that right; but you need to be

10    by a microphone because the recordings don't pick it up

11    and the stenographer can't take it down.

12         THE DEFENDANT:  Okay.

13         THE COURT:  You have a right to allocute.  I'm

14    going to afford you that right to allocute, but you

15    need to be by the microphone.

16         THE DEFENDANT:  Okay.  I'm just going to keep

17    this short.

18         THE COURT:  No, but you still need to be by the

19    microphone.

20         THE DEFENDANT:  That's okay.  I understand.

21         Unless that accuser shows up, the Plaintiff

22    shows up and testifies, this case is fraud.  It's void.

23    I've given you notice that I've tendered a certified

24    copy of the live birth certificate, promissory note,

25    the jury verdict form, which is not signed, does not

1    bear the Court seal, all accepted with value, all of my

2    original signature.  And also I want to remind you --

3          THE COURT:  Mr. Fall, do you wish --

4          THE DEFENDANT:  Sir, I want to remind you that

5    if the U.S. Marshals touch me and there's no sworn

6    accusation on the record, as you know there isn't, only

7    I have an accusation on the record sworn, no verifiable

8    claim on the record, you know all this, sir --

9          MR. FITZGERALD:  John, it needs to be recorded.

10          THE DEFENDANT:  It can hear me fine.  I have a

11    very good voice.

12          THE COURT:  Mr. Fall, do you wish to allocute --

13          THE DEFENDANT:  Then that is fraud, sir, and

14    it's a felonious act, and I'm sure you don't want a

15    felonious act happening by way of your case.

16          THE COURT:  Vickie, give Mr. Fall a microphone,

17    please.

18          THE DEFENDANT:  It doesn't matter to me if it's

19    in the transcript.  I have witnesses here.

20          THE COURT:  The deputy clerk is going to hand

21    Mr. Fall a microphone so he can be afforded his

22    opportunity to allocute.

23          THE DEFENDANT:  I feel important now.  So let's

24    start with the basics, and I'm going to put all of this

25    under affirmation so the stenographer has this.

1   Everything I say from now on is under affirmation.

2         I have done no wrong.  There's been no act of

3   Congress before this Court.  That's absolutely insane.

4   What law are they talking about?

5         There is no act of law.  There is no act of

6   Congress before this case.  There's no accuser.  I am

7   neither the accused nor the Defendant.  I have no

8   attorney.  I've had no representation in this case

9   because the nature of the charges have been concealed

10  at all times.  It's absolutely impossible to obtain

11  counsel unless the nature of the charges are made

12  known.

13        It's very simple.  So if the accuser doesn't get

14  on that witness stand right now and the Plaintiff with

15  face, then this case is fraud and it's void.

16        The record shows proof that I am a man, John

17  Joseph Fall, and I'm a private citizen, not a public

18  citizen.  And I'm without titles nor surety, and I am

19  the sole grantor and beneficiary in the private trust

20  John J. Fall, and I'm not the trustee.  I believe

21  Mr. McKane (sic) is the trustee.

22        This case damages that interest and my property,

23  yet there is no act of Congress before the Court as I

24  have said.  And I'm not represented by an attorney.

25  I've never been represented by an attorney.

1          The Defendant is a fiction.  And since there is

2     no sworn accusation on the record against either me or

3     said trust and no lawful jury verdict, as the jury

4     verdict form clearly shows, I wish and require you to

5     confirm to all the U.S. Marshals here that I have filed

6     a claim for $1 million if they touch me or trespass

7     against me in any way.

8          I verify that all the documents I placed on the

9     record are the truth, and they're unrebutted.  I am the

10    only one with a sworn accusation on the record.  There

11    is no other accusation.

12         I've placed on the record proof that John J.

13    Fall is a trust, a private trust.  I've also placed on

14    the record proof that, none of which has been disputed,

15    that I am a man and a private citizen.  I'm not a U.S.

16    citizen.  I'm not a surety to the public.

17         Sir, I require you to take notice that I have

18    presented the prosecutors this morning with certified

19    copies of both the jury verdict form and the

20    certificate of live birth, both accepted for value in

21    exclusive equity with my original signatures, plus

22    seven certified money notes with my original

23    signatures, all presented with intent to discharge and

24    abate the matter without admitting to any wrongdoing.

25    I simply want my property free.

1          I declare this matter as now discharged and

2     abated without further effect.

3          THE COURT:  Thank you, Mr. Fall.

4          Mr. Fall, I have one question for you that I

5     didn't ask earlier.  Did you --

6          THE DEFENDANT:  Sir, is there an order that

7     requires the man, John Joseph Fall, the private

8     citizen, to be here?

9          THE COURT:  Yes.

10          THE DEFENDANT:  May I see that order bearing a

11     clerk's seal and the clerk's signature because you're

12     putting these men in harm's way if you don't show that

13     order.

14          THE COURT:  Mr. Fall, I'm issuing an order

15     consistent with the Court's prior order that you attend

16     all hearings of this Court.  This is a sentencing

17     procedure.  You're required to be here.

18          THE DEFENDANT:  Then I require you to show the

19     marshals that order.

20          THE COURT:  If you attempt to leave the

21     courtroom at this time, I'm instructing and ordering

22     the marshals to take you into custody.

23          THE DEFENDANT:  I require you to show that

24     order, sir, that specifically names the man, John

25     Joseph Fall, six foot one, blue eyes, not the fiction

1    John J. Fall.

2         THE COURT:  Mr. Fall, have you had a chance to

3    review the presentence report?  I didn't ask you that

4    earlier.  Did you get a copy of the presentence report?

5         THE DEFENDANT:  Sir, you well know by my sworn

6    testimony on the record I cannot read, I do not

7    comprehend legalese.

8         THE COURT:  So you're not answering the

9    question as to whether you received it?

10         THE DEFENDANT:  There's sworn testimony on the

11    record that's not been rebutted.

12         THE COURT:  This Court has reviewed the many

13    filings that have taken place in this case.  The Court

14    has considered the facts that came out at trial during

15    this case having sat through it.  The Court has

16    considered the filings during sentencing of the

17    Government and the arguments of both counsel for the

18    Government and for Mr. Fall as well as the allocution

19    made by Mr. Fall this morning.

20         And I find that the nature and circumstances of

21    the offense are such that Mr. Fall not just failed to

22    pay taxes for over a decade but took affirmative and

23    evasive tactics to avoid tax liability.

24         It involved an intricate and a sophisticated

25    system of fraud spanning this country and spanning

1       almost over a decade, and it involved many others.

2              You used dummy corporations and companies,

3       fraudulent accounts, fake names to accomplish the goal

4       of obstructing in this case.

5              THE DEFENDANT:  Sir, where is the sworn

6       testimony that says that?

7              THE COURT:  These actions by you show your

8       history and characteristics of intricate deception and

9       a long history of illegal behavior.

10             In order to reflect the seriousness of the

11      offense and promote respect for the law and consistent

12      with the 3553 factors that this Court has and does

13      consider and to punish you for your conduct, a serious

14      jail sentence is required.

15             The guideline recommendation --

16             THE DEFENDANT:  I'm not accepting any jail

17      sentence, nor fines, nor taxes.

18             THE COURT:  The guideline range of 41 to -- the

19      guideline range is 41 to 51 months; but this Court

20      believes that a 30-month sentence, two-and-a-half

21      years, is sufficient but not greater than necessary to

22      comply with all of the purposes of sentencing.

23             And, therefore, Mr. Fall, I sentence you to a

24      period of incarceration of 30 months in the custody of

25      the Bureau of Prisons.

1      In addition to the 30 months, the Court imposes

2   as to Counts I, III and IV a period of one year of

3   supervised release; as to Count II, a period of three

4   years of supervised release, all to run concurrently.

5      You shall cooperate -- as a special condition,

6   in addition to the standard conditions of supervised

7   release, you shall cooperate with the Internal Revenue

8   Service and file all outstanding tax returns and pay

9   all outstanding taxes, interest and penalties.

10     The Court finds that a fine is not appropriate

11  but the Court imposes the $400 mandatory special

12  assessment.

13     Anything further from Probation?

14     THE PROBATION OFFICER:  Nothing further, your

15  Honor.

16     THE COURT:  Mr. Fall, the Court hereby notifies

17  you that you have a right to appeal this sentence.

18     THE DEFENDANT:  Sir, I'm not the person,

19  Mr. Fall.  Please stop referring to me that way.

20     THE COURT:  If you can't afford the cost of an

21  appeal --

22     THE DEFENDANT:  I'm John Joseph Fall.  I have

23  sworn testimony on the record what my name is.

24     THE COURT:  If you can't afford the cost of an

25  appeal, you may move to proceed in forma pauperis.  If

1    you can't afford counsel for an appeal, one will be

2    appointed for you.  You are also notified that the

3    Clerk of Court will file an appeal on your behalf if

4    requested to do so by you.

5         THE DEFENDANT:  No one has permission to file

6    anything on my behalf.

7         THE COURT:  Any appeal from the sentence must be

8    filed within 14 days of entry of the judgment on the

9    docket.  Mr. Fall, do you understand these appellate

10   rights?

11        THE DEFENDANT:  You have my testimony on the

12   record, sworn and unrebutted.

13        THE COURT:  Mr. Kane, anything --

14        THE DEFENDANT:  There's nothing to understand.

15   I'm the only one with sworn accusations on the record.

16   This case is entirely fraud.

17        THE COURT:  Mr. Kane, anything further for the

18   Government?

19        MR. KANE:  Two things, your Honor.  The

20   Government moves to revoke bail.  We don't think this

21   is an appropriate case for voluntary surrender given

22   the living circumstances, the inconsistent living

23   circumstances, the fact that he doesn't have a job, his

24   use of aliases, the nature of the conduct that he

25   committed for which he was convicted, his conduct here

1    today once again showing disrespect for the Court.

2              THE DEFENDANT:   I mean no disrespect, sir.

3              MR. KANE:   His talking over the Court when the

4    Court is trying to issue its orders.   For multiple

5    reasons, he's not an appropriate case for voluntary

6    surrender.   So that's point number one.

7              Point number two, I'd note that the Court did

8    not impose the special conditions that we requested as

9    to frivolous filings, and I think I can understand

10   where the Court might be coming from there; but we

11   would ask the Court perhaps to issue an order that

12   would have a magistrate judge review all future filings

13   from this Defendant and make a determination whether

14   they were or are false and frivolous and not enter them

15   into Pacer and become public records.

16             I think this may have been done in another case

17   by Judge Lisi.   We can look into that and submit

18   something to the Court.

19             THE COURT:   Mr. Kane, I'm not going to impose

20   that condition.   I think the system works itself out

21   even with potentially frivolous filings.   If there's

22   material that you believe once it's filed it should be

23   stricken, then an appropriate motion, or anyone, an

24   appropriate motion should be made.

25             I can understand your frustration, but I think

1    we need to let the system play out in that regard.

2             Mr. Fitzgerald, any position on revocation of

3    bail?

4             MR. FITZGERALD:  Yes, your Honor.  Despite all

5    of the arguments about him being disrespectful of the

6    Court and talking over the Court and everything else in

7    court, he has always showed up for court on time, where

8    he's supposed to be, when he's supposed to be there and

9    can be certainly depended on to do that and report to

10   Bureau of Prisons when the Court orders him to do that.

11            THE COURT:  Mr. Fitzgerald, I agree with you

12   that that has been the case.  That's why I granted him

13   bail at your request a couple of weeks ago.  However,

14   this is a different situation.

15            I'm going to remand immediately the Defendant

16   into the custody of the U.S. Marshals.  My concern is

17   his continued failure this morning as well knowing this

18   was pressing to even acknowledge who he is, and I fear

19   his -- if he carries that issue forward that he

20   wouldn't otherwise report in light of the sentence that

21   was imposed.  So I'm going to remand him to the custody

22   of the U.S. Marshals.

23            THE DEFENDANT:  They better make sure that

24   there's a Court order, sir, signed with a court seal on

25   it.

1    THE COURT:  We'll stand adjourned.

2    (Adjourned.)

3    * * * * * * * *

4

5    C E R T I F I C A T I O N

6

7

8    I, Karen M. Wischnowsky, RPR-RMR-CRR, do

9    hereby certify that the foregoing pages are a true and

10   accurate transcription of my stenographic notes in the

11   above-entitled case.

12

13   February 16, 2016

14   Date

15

16

17   /s/ Karen M. Wischnowsky

18   Karen M. Wischnowsky, RPR-RMR-CRR
     Federal Official Court Reporter
19

20

21

22

23

24

25